UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY CLANCY,<br><br>    Plaintiff,<br><br>    v.<br><br>THE BROMLEY TEA COMPANY, et al.,<br><br>    Defendants. | Case No. 12-cv-03003-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO STRIKE, AND DENYING DEFENDANTS' MOTION TO STAY DISCOVERY**<br><br>Re: ECF Nos. 50 & 54. |

## I. INTRODUCTION

Plaintiff Tony Clancy ("Clancy"), on behalf of himself and a proposed class of similarly situated individuals, has filed a First Amended Complaint ("FAC") against Defendants Bromley Tea Company, Eastern Tea Corp., London Holding Company, Inc., Bromley Products Corp., and several individuals (collectively "Bromley"). ECF No. 17. Bromley has filed a motion for judgment on the pleadings, and a motion to stay discovery. ECF Nos. 50 & 54.

After considering the moving papers, the arguments of the parties at the hearing held on June 20, 2013, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Bromley's motion for judgment on the pleadings, and DENIES Bromley's motion to stay discovery.

## II. BACKGROUND

### A. Factual Background

For the purposes of these motions, the Court adopts the following factual allegations from the Clancy's First Amended Complaint.

Bromley produces, markets and sells several different varieties of tea and makes health

claims about its products on its website and product labels. FAC ¶¶ 2–5. Clancy alleges that Bromley's website contains antioxidant, nutrient content and health claims, and that the products themselves contain additional health claims on the package labels. FAC ¶¶ 4–5.

Clancy alleges that he purchased Bromley's food products, including Pure Green Tea and 100% Organic Pure Black Tea, within the last four years. FAC ¶ 115, 126. Clancy read the packaging labels, as well as Bromley's website, before purchasing the Bromley's products. FAC ¶ 116. The packaging labels included nutrient content, and health claims, including the phrase "natural source of antioxidants." FAC ¶ 117. The website makes such claims as "Antioxidants in Green and Black Tea is brimming with Antioxidants, the disease-fighting compounds that help your body stave off illness" and "Green Tea Extract May Lower Blood Pressure. . . ." FAC ¶ 3. Plaintiff relied upon these and other claims in purchasing Defendants' products. FAC ¶ 117.

**B.     Procedural History**

Clancy, on behalf of himself and a proposed class of similarly situated individuals, filed a complaint against Bromley in June 2012, and a First Amended Complaint ("FAC") in October of that year. ECF Nos. 1 & 17. In the FAC, Clancy alleges that Bromley made unlawful and deceptive claims on its product labels, violating California's Sherman Law, Cal. Health & Safety Code §§ 109875, *et seq.* ("Sherman Law"), which incorporates the requirements of the federal Food, Drug, and Cosmetics Act ("FDCA").[1] ECF No. 17. Plaintiff asserts causes of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), the Song-Beverley Consumer Warranty Act, Cal Civ. Code s§ 1790 *et seq.* ("Song-Beverly"), and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("Magnuson-Moss"). Plaintiff also alleges a common law claim for restitution based on unjust enrichment.

---

[1] The FDCA gives food labeling authority to the FDA. The Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1, amended the FDCA, settingforth "uniform national standards for the nutritional claims the required nutrient information displayed on food labels." Any reference to the FDCA in this order includes the NLEA amendments.

Defendants have moved for judgment on the pleadings. ECF No. 50. In the motion, Defendants argue that Plaintiff lacks standing as to certain products and representations that he did not see, that Plaintiff's state-law claims are preempted by the FDCA, that Plaintiff failed to plead fraud with particularity under FRCP 9(b), that unjust enrichment is not a legally cognizable cause of action, that Plaintiff's warranty claims fail as a matter of law because the products do not include express warranties, and that claims against the individual defendants should be dismissed since Plaintiff fails to allege that they committed any wrongdoing. Pursuant to FRCP 12(f), Defendants also moved to have the Court strike as immaterial Plaintiff's claims regarding: (1) products Plaintiff never bought and statements he never saw; (2) Plaintiff's nationwide class allegations. ECF No. 50.

Defendants have also filed a motion to stay discovery. ECF No. 54.

**C.  Legal Standards**

**1.  Motion for Judgment on the Pleadings**

After the pleadings are closed, any party may move for judgment on the pleadings pursuant to Rule 12(c). The Court must accept all facts in the complaint as true, and view them in the light most favorable to the non-moving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings is appropriately granted when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6). Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal citations omitted).

In this case, Clancy's preemption, unjust enrichment, warranty, and individual-defendant arguments are assessed under the standards that would govern dismissal for failure to state a claim under Rule 12(b)(6). Clancy's standing argument goes to the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1). The Court assesses Bromley's motion to dismiss Clancy's fraud claims pursuant to Rule 9(b).

      **a.  Failure to state a claim**

For purposes of a Rule 12(b)(6) motion to dismiss, "all allegations of material fact are

3

taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) cert. denied, --- U.S. ---,132 S. Ct. 2101 (U.S. 2012).  "The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.  To survive a motion to dismiss, a pleading must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.  Twombly, 550 U.S. at 556.

### b. Standing

The case or controversy requirement of Article III requires that, in order for a party to have standing to raise a claim: (1) the party invoking federal jurisdiction must have suffered an actual or threatened injury; (2) the injury must be fairly traceable to the defendant's challenged conduct and; and (3) the injury must be redressable.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  An actual or threatened injury requires damages to "a legally protected interest which is (a) concrete and particularize and (b) actual or imminent, not conjectural or hypothetical." Id.  "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007).

### c. Pleading Fraud

When a claim contains allegation of fraud, Rule 9(b) requires a party to state "with particularity the circumstances constituting fraud or mistake."  The allegations must be specific enough to give the defendant notice of the particular misconduct alleged so that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Allegations

1  sounding in fraud must contain "'the who, what, when, where, and how' of the misconduct

2  charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)

### 2. Motion to Strike

Pursuant to Rule 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973(9th Cir. 2010).

### 3. Motion to Stay Discovery

Under Rule 26 of the Federal Rules of Civil Procedure, district courts have broad discretion to stay discovery on a showing of "good cause." Fed. R. Civ. P. 26(c). "[I]f the allegations of the complaint fail to establish the requisite elements of the cause of action . . . it is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." Rutman Wine v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).

## D.   Jurisdiction

Since this is a class action in which: (1) there are over 100 members in the proposed class, (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, this action satisfies 28 U.S.C. § 1332(d). Moreover, the amount in controversy exceeds the sum or value of $75,000, and the dispute is between citizens of different states, satisfying the requirements of diversity jurisdiction. 28 U.S.C. § 1332(a).

Therefore, assuming that Plaintiff has standing (discussed at III-A, *infra*), subject-matter jurisdiction is proper over this action.

/ / /

/ / /

## III.  ANALYSIS

### A.   Standing

Bromley argues that Clancy lacks standing to "assert[] claims regarding products he never bought and website statements he never saw." Motion, at 4:20-21.

### 1. Products Clancy Did Not Buy

Clancy, the named plaintiff, has alleged that he bought two of the defendant's tea products. FAC, ¶ 115. Defendants do not dispute that this is sufficient for him personally to establish standing to assert a cause of action relating to those purchases. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates, 511 F.3d at 985. As this is a proposed class action complaint, however, the complaint also describes claims that would be brought on behalf of the proposed class, and those claims relate to different Bromley products that Clancy did not buy. Bromley argues that since "[y]ou can't be injured by what you didn't buy," Clancy cannot assert injury-in-fact as to those proposed class allegations, and that claims relating to those products should be dismissed and the relating averments stricken.

The Supreme Court has noted that "there is tension in [its] prior cases" regarding whether differences among class members "is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." Gratz v. Bollinger, 539 U.S. 244, 263 & 263, n.15 (2003). Neither party cites controlling Ninth Circuit authority that directly addresses the precise question, and the Court is not aware of any.

Courts in this district have reached different conclusions on similar facts. See Miller v. Ghirardelli Chocolate Co., C12-04936-LB, 2012 WL 6096593 (N.D. Cal. Dec. 7, 2012) (recognizing split and analyzing cases). Under one theory, "[w]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing." Granfield v. NVIDIA Corp., C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); see also Herskowitz v. Apple Inc., 12-CV-02131-LHK, 2013 WL 1615867 (N.D. Cal. Apr. 15, 2013); Carrea v. Dreyer's Grand Ice Cream, Inc., C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011).

Another group of case adopts a middle-ground position, in which "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and [those] not purchased." Astiana v. Dreyer's Grand Ice Cream, Inc., 11-cv-2910-EMC, 2012 WL 2990766, at

1  \*11 (N.D. Cal. July 20, 2012); Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000, 1006 (N.D.
2  Cal. 2012).  If the products are similar enough that "an individualized factual inquiry [is] not
3  needed for each product," then there should be no dismissal for lack of standing.  Stephenson v.
4  Neutrogena, No. 12–cv–00426 PJH, 2012 U.S. Dist. LEXIS 105099, at \*3 (N.D. Cal. July 27,
5  2012).  But if there is insufficient similarity, this line of cases holds that dismissal for lack of
6  standing is appropriate.

A third group of courts holds that as long as the named plaintiff has individual standing to bring claims regarding the products he or she did actually purchase, the question of whether a proposed class can bring claims related to other products is an issue properly addressed at the class certification stage.  See Kosta v. Del Monte Corp., 12-CV-01722-YGR, 2013 WL 2147413, at \*15 (N.D. Cal. May 15, 2013) ("any concerns regarding the differences among products at issue are better resolved at the class certification stage"); see also Koh v. S.C. Johnson & Son, Inc., C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010).  To these courts, "'[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." Greenwood v. Compucredit Corp., CIV. 08-04878 CW, 2010 WL 4807095, at \*3 (quoting 7AA Wright et al., Federal Practice and Procedure (3d. 2005) § 1758.1, pp. 388–89 (N.D. Cal. Nov. 19, 2010); see also Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing).

Beyond invoking the first two groups of cases and arguing that the facts here are consistent with them, Bromley cites no appellate opinions or even any legal principle that explains why the doctrine of standing should apply here.  In identifying the source of the "tension" on this issue, the Gratz court cited Blum v. Yaretsky, 457 U.S. 991 (1982), as having held that "class representatives who had been transferred to lower levels of medical care lacked standing to challenge transfers to higher levels of care." Gratz, 539 U.S. at 263, n.15.  But read closely, Blum did not hold as much, or at least did not do so very clearly.  In Blum, the district court certified a

7

1  class of nursing home patients whose care had been reduced or eliminated, and then later issued a
2  new pretrial order expanding the class to also include those who had been transferred to *higher*
3  levels of care. 457 U.S. at 997 & 997, n. 9. The Court held that "respondents" (meaning,
4  presumably, the newly expanded class) lacked "standing to seek an adjudication of the procedures
5  attending such transfers." Id., at 1001. The reason was not the earlier-certified class members
6  could not join the same action as the later-certified class members. It was because "[n]othing in
7  the record available to this Court suggest[ed] that any of the individual respondents have been
8  either transferred to more intensive care or threatened with such transfers," and therefore that harm
9  was too speculative to constitute an injury-in-fact. Id. In other words, *no plaintiffs* in the class
10 had standing to assert the claim of being transferred to higher-level care. Blum stands for the
11 undisputed proposition that at least some members of a class must have standing to assert causes
12 of action brought by the class. It provides no support for dismissal here.

13     Another phrase often quoted in support of Defendants' argument is this one: "'[t]hat a suit
14 may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who
15 represent a class 'must allege and show that they personally have been injured, not that injury has
16 been suffered by other, unidentified members of the class to which they belong and which they
17 purport to represent.'" Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. Eastern Ky.
18 Welfare Rights Organization, 426 U.S. 26, 40, n. 20 (1976) (quoting Warth v. Seldin, 422 U.S.
19 490, 502 (1975)).[2] But in Simon, 426 U.S. at 40-46, and Warth, 422 U.S. at 502-08, the Court
20 held that the *named* plaintiff failed to assert injury-in-fact, and the Court's admonition merely
21 explained that a plaintiff cannot create standing where it does not exist by seeking to certify a
22 class. Since Mr. Clancy has standing, these cases are inapposite. As for Lewis, the trial court had
23 already tried that case and determined that only two individual plaintiffs had suffered injury. 518
24 U.S. at 356. The Supreme Court quoted Simon and Warth in explaining why it was error for the
25 district court to issue a broad, systemwide injunction which related to injuries allegedly suffered

---

[2] This phrase features prominently in Chin v. General Mills, Inc., Case No. 12-2150 (MJD/TNL), 2013 WL 2420455, at *3 (D. Minn. May 31, 2013), a case Defendants filed as a "statement of recent decision" after briefing pursuant to Civil Local Rule 7-3(d)(2). ECF No. 61.

by class members who had not proved injury at trial. 518 U.S. at 360-61. This is hardly of assistance to Defendants' argument for judgment on the pleadings.

The other potential source for Defendants' view of standing is Justice Stevens' dissent in Gratz, to which the Court was responding when it acknowledged the tension on this issue. Justice Stevens argued that named plaintiffs who were no longer applying to the University of Michigan lacked standing to seek prospective relief against that school, and therefore could not represent a class of persons who sought such relief. See 539 U.S. at 282 (Stevens, J., dissenting). For one thing, even Justice Stevens' view is distinguishable from this case, since his primary objection seemed to be about the difference in relief sought rather than the dissimilarities in injury. Id. And he too at one point doubted whether *any* members of the class had standing. See id. at 290-91 (the "unidentified class members [seeking prospective relief] . . . *may or may not* have standing to litigate on behalf of themselves"). But probably more importantly, the majority of the Court responded to Justice Stevens' argument by holding that "[r]egardless of whether the requirement is deemed one of adequacy or standing, it is clearly satisfied in this case." Gratz, 539 U.S. at 263. Assuming *arguendo* that "standing" is the proper analytic framework, if the named plaintiffs in Gratz had "standing" to seek prospective relief against a school to which they were not applying, then Mr. Clancy has "standing" to assert claims relating to products he did not buy.

To this Court, however, "standing" does not seem to be the proper framework for that question or for this one. Transmogrifying typicality or commonality into an issue of standing would undermine the well-established principles that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements," Bates, 511 F.3d at 985, and that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, 131 S.Ct. 2541, 2550 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)). In determining whether a plaintiff in a proposed class action has standing, the Ninth Circuit's "law keys on the representative party, not all of the class members, and has done so for many years." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020-21 (9th Cir. 2011) cert. denied, 132 S. Ct. 1970, 182 L. Ed. 2d 819 (U.S. 2012).

Deciding at the pleading stage that a plaintiff cannot represent a class who purchased any different products than the plaintiff seems unwarranted, at least on the facts of this case. A plaintiff has sufficiently "typical" claims to represent a class if his claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Whether products are "sufficiently similar" is an appropriate inquiry, but it does not relate to standing: a plaintiff has no more standing to assert claims relating to a "similar" product he did not buy than he does to assert claims relating to a "dissimilar" product he did not buy. Seen this way, analyzing the "sufficient similarity" of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23.

Defendants' most well-taken objection is that they would suffer prejudice from having to respond to discovery regarding class allegations that are not specifically defined or directly connected to the named plaintiff's alleged injury. An expansively written class action complaint can certainly have that effect. But the Court can address that concern with careful case management and the supervision of discovery.

The named plaintiff has standing to assert claims relative to the products he purchased. He does not claim to have standing to assert claims related to other products. What he does claim is that he may be a potential representative of a class of people who have such standing. He may or may not be able to certify such a class, and he may or may not be an adequate representative. But applying the concept of standing to dismiss proposed class action allegations is a category mistake.

**2.     Statements Mr. Clancy Did Not See**

Defendants also argue that Mr. Clancy cannot sue regarding statements he did not see prior to purchasing their products. Mr. Clancy specifically pleaded that he read statements on Bromley's website prior to purchasing the tea products. FAC, ¶¶ 87, 91 & 116. This should be sufficient under normal pleading standards to establish Article III standing. To the extent that Defendants argue that he must plead with more specificity which specific representations he saw on the website, this is a Rule 9(b) argument rather than a standing question, and is addressed at III-

10

1  D, *infra*.

2  To the extent that Defendants contend that more is required under the UCL's statutory
3  "standing" requirements, as discussed at the hearing on the motion, the Court does not agree with
4  Defendants that Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003), is "controlling." In
5  Rice, the Ninth Circuit found a plaintiff failed to allege a valid Lanham Act and UCL claim
6  "because there is no evidence that a potential consumer could view the offending videotape jacket
7  prior to purchase, any deception relating to advertisement of the videos must be immaterial." Id.
8  Rice holds only that a UCL claim does not lie where the allegedly unlawful statements "could not
9  be observed by potential consumers, and therefore could not influence the purchasing decision."
10 Id. In other words, it does not hold that the *named plaintiff must see* the advertisements; it holds
11 that it must have been *possible for potential customers* to see them.

12 In any event, subsequent to Rice, the California Supreme Court has held that the degree of
13 specificity alleged in the FAC is sufficient under the UCL for claims of false advertising. In re
14 Tobacco II Cases, 46 Cal. 4th 298 (2009). When "a plaintiff alleges exposure to a long-term
15 advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity
16 that the plaintiff relied on particular advertisements or statements." Id. at 328; see also
17 Greenwood, 2010 WL 4807095, at *5 ("[I]n UCL claims for false advertising, a material
18 misrepresentation results in a presumption, or at least an inference, of individualized reliance").
19 While Defendants object that Plaintiff has not specifically alleged that he was "exposed" to an
20 advertising campaign as in In re Tobacco Cases II, his allegation at ¶ 116 of the FAC, at least
21 under normal pleading standards, does assert such exposure.

22 Whether the Plaintiff can represent class members who have relied on different
23 advertisements then those on which the plaintiff himself relied is, for the reasons explained *supra*,
24 an issue for the class certification stage.

25 **B.  Nationwide Class Allegations**

26 Plaintiff is a California citizen seeking to recover under California's consumer protection
27 laws, but he seeks to represent a class action on behalf of citizens of other states. Defendants ask
28 the Court to strike Plaintiff's nationwide class allegation, citing Mazza v. American Honda Motor

11

Co., Inc., 666 F. 3d 581 (9th Cir. 2012), for the proposition that California's consumer protection laws cannot be applied nationwide. In essence, Defendants argue that Mazza stands for the proposition that California's consumer protection laws materially differ from the laws of all other states *in all cases*. This overreads Mazza. Mazza did not establish "such a bright-line rule," but rather contained a detailed choice-of-law analysis which determined that "in *that case* California law should not be applied to non-California residents." Won Kyung Hwang v. Ohso Clean, Inc., C-12-06355 JCS, 2013 WL 1632697, at * 21 (N.D. Cal. Apr. 16, 2013) (emphasis in original). "Mazza did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." Forcellati v. Hyland's Inc., 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).

The plaintiffs in Mazza brought a nationwide class action against Honda, alleging violations of California's consumer protection laws related to Honda's advertising of its collision mitigation braking system. 666 F. 3d at 587. The district court certified a nationwide class, but on appeal the Ninth Circuit reversed. That court engaged in a detailed analysis of California's choice-of-law rules and found that the differences between the consumer protection laws of California and those of other states in which class members bought cars could materially affect the outcome of that litigation. The court specifically noted that "Honda [had] exhaustively detailed the ways in which California law differs" in its briefing. Id. at 591.

Such a detailed choice-of-law analysis is not appropriate at this stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery. See Donahue v. Apple, Inc., 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012); see also In re Clorox Consumer Litigation, 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs claims"). Mazza, of course, will be relevant to the decision whether to certify any proposed class or sub-class. But at this early stage of the litigation, "it would be premature to speculate about whether the difference in various states' consumer protection laws are material in this case." Forcellati, 876 F. Supp. 2d at 1159.

**C.     Preemption**

12

1    Defendants challenge Clancy's claims as preempted, for two reasons.  First, they argue that
2 the FDCA prohibits Plaintiff from invoking the Sherman Law's private right of action.  Second,
3 they argue that Plaintiff is seeking to impose substantive requirements greater than those required
4 under the FDCA and FDA regulations.

### 1. Preemption of the Sherman Law's Private Right of Action

Bromley argues that all of Plaintiff's claims are preempted because they are based on alleged regulatory violations of the FDCA.  There is no private right of action to enforce the FDCA or regulations promulgated by the FDA, and even though plaintiff's state law claims allege a violation of California's Sherman Law, Defendants argue he is actually attempting to enforce the FDCA.

Preemption is fundamentally a matter of Congressional intent, but in analyzing the issue courts must begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  Wyeth v. Levine, 555 U.S. 555, 565 (2009) (internal citations omitted).  States have traditionally possessed the power to protect their citizens from fraud and deception in the sale of food, and therefore there is a strong presumption against federal preemption in the area of marketing food.  See Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 144 (1963).

When Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements.  21 U.S.C. § 343-1(a).  However, it did not attempt to completely preempt state laws regarding the marketing of food products.  To the contrary, Congress specifically anticipated states enacting their own identical laws.  See In re Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1090 (2008), cert. denied, Albertson's, Inc. v. Kanter, 555 U.S. 1097 (2009) ("Congress clearly stated its intent to allow states to establish their own identical laws. . . .").  Those state laws are only preempted if they are not "equal to, or substantially identical to, requirements imposed by or under the [FDCA]."  Medtronic, Inc. v. Lohr, 518 U.S. 470, 496–97 (1996); see also Stengel v. Medtronic Inc., 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (state law claims that parallel federal law duties under FDCA are not preempted either expressly or impliedly).  California

13

complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement. "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . shall be the food regulations of this state." Cal. Health & Safety Code § 110100(a).

At its core, defendant's motion asks whether the FDCA preempts a California citizen from bringing suit to enforce the state's food labeling requirements, which are identical to the federal requirements. Courts in this district "have repeatedly refused to find preemption" where "a requirement imposed by state law effectively parallels or mirrors the relevant sections of the [FDCA]." Wilson v. Frito-Lay North America, Inc., 12-1586 SC, 2013 WL 1320468, at *7 (N.D. Cal., Apr. 1, 2013). See also Brazil v. Dole Food Co., Inc., 12-CV-01831-LHK, 2013 WL 1209955 (N.D. Cal., Mar. 25, 2013) (holding that the FDCA did not preempt identical provisions under the Sherman Law); Kosta v. Del Monte Corporation, 12-cv-01722-YGR, 2013 WL 2147413 (N.D. Cal., May 15, 2013) (finding no conflict between the Sherman Law and FDCA and refusing to find that the Sherman Law claims preempted); In Re Farm Raised Salmon Cases, 42 Cal. 4th at 1084, n. 5 ("There is no dispute that, under California law, private parties may assert UCL claims based on violations of the Sherman Law"). Plaintiffs must navigate a "narrow gap" to avoid preemption – they must be suing for conduct that *violates* the FDCA, but not *because* the conduct violates the FDCA. Perez v. Nidek Co., Ltd., 711 F.3d 1109, 1120 (9th Cir. 2013). Plaintiffs have done that here.

The Ninth Circuit's decision in Pom Wonderful LLC v. Coca–Cola Co., 679 F. 3d 1170 (9th Cir. 2012), does not require a different result. In that case, Pom Wonderful sued Coca-Cola under the federal Latham Act, alleging the defendant's product was misleadingly labeled because it contained less than 1% juice. Id. at 1172. Pom Wonderful also brought claims under California's UCL and FAL on the theory that Coca-Cola violated the requirements of the FDCA as adopted by the Sherman Law. Id. at 1173. The Ninth Circuit affirmed dismissal of the Latham Act claim because it would "require a court originally to interpret ambiguous FDA regulations," usurping the FDA's interpretive authority. Id. at 1176. While the court held that the FDCA forbade Pom Wonderful's claims under the Latham Act, it did not address whether state law

14

claims were preempted, and remanded the case. The court specifically left open the question of preemption of state law claims. See Brazil, 2013 WL 1209955, at *7; Ivie v. Kraft Foods Global, Inc., c-12-02554-RMW, 2013 WL 685372, at *8 (N.D. Cal, Feb. 25, 2013); Kosta, 2013 WL 2147413, at *12.

Defendants' reliance on the Ninth Circuit recent decision in Perez, 711 F.3d at 1109, is also misplaced. In that case, the plaintiff brought a claim of fraud by omission because doctors had failed to notify him that the medical device used during his eye surgery had not yet been approved by the FDA for that particular procedure. Id. at 1117. The Ninth Circuit held that plaintiff's claims were expressly and impliedly preempted by the Medical Device Amendments to the FDCA for two reasons. First, the plaintiffs were trying to impose a requirements that was greater than that required by the FDA (specifically, a requirement that the physicians disclose to patients whether a particular device had received FDA approval). Id. at 1118. Second, plaintiff's fraud by omission claim existed solely by virtue of the FDCA requirements. Id. at 1119. The plaintiff was suing because defendants had not informed him of the FDA status of the device. If the FDA did not exist, there would be no FDA status, and the plaintiff's fraud by omission clause would have no basis.

Here, there is no similar problem. Plaintiff is suing for violations of the Sherman Law, not attempting to impose requirements greater than those imposed by the FDCA. The Sherman Law is limited to the requirements of the FDCA. However, it exists independently of that law, and violating its requirements would be a valid state cause of action even if the FDA ceased to exist. The sole basis of Perez's claim was the FDA status of the device, and so his claim depended entirely on the existence of the FDA. But here, Clancy's claim does not depend on the FDA, except in the sense that the Sherman Law mirrors the requirements of the FDCA. This court does not read Perez as having quietly reversed the well-established principle of cooperative federalism, recognized in numerous cases discussed *supra*, that states may enact laws whose substantive content mirrors that of a federal statute.

The final case cited by Defendants' counsel at oral argument, Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 351 (2001), is distinguishable. There, plaintiffs brought a state tort

15

1  claim against a medical device manufacturer for defrauding the FDA in a pre-market approval
2  process. Id. at 346-47.  The Court found such claims impliedly preempted because the FDA's
3  own authority to fight fraud committed against it "is used by the Administration to achieve a
4  somewhat delicate balance of statutory objectives," and that balance "can be skewed by allowing
5  fraud-on-the-FDA claims under state tort law." Id.at 348.  This case does not involve a claim that
6  intrudes so blatantly on the FDA's domain, and Defendants have failed to demonstrate that private
7  rights of action under the Sherman Law interfere with the FDCA's regulatory processes in any
8  comparable manner.  Notably, the Buckman court acknowledged that its earlier precedent,
9  "Medtronic[,] can be read to allow certain state-law causes of actions that parallel federal safety
10 requirements." Buckman, 531 U.S. at 353.

11 More importantly, the Ninth Circuit, sitting en banc, recently reviewed Medtronic and
12 Buckman, among other preemption cases, and unanimously concluded that the MDA amendments
13 to the FDCA neither impliedly nor expressly preempt plaintiffs from bringing a failure-to-warn
14 claim against a medical device manufacturer, because they brought a "state-law claim that is
15 independent of the FDA's pre-market approval process that was at issue in Buckman," and
16 because "[t]he claim rests on a state-law duty that parallels a federal-law duty under the MDA."
17 Stengel, 704 F.3d at 1233.  The same is true of the claim brought in this case.

18 **2.     Substantive Requirements Differing from the FDCA**

19 Plaintiff's state law claims under the Sherman Law are, for the reasons stated *supra*, only
20 preempted if they impose regulations that differ from those imposed by the FDA.  Under 21
21 C.F.R. § 101.54(g), a nutrient content claim regarding the level of antioxidants in a food may be
22 used on a food label only if certain conditions are met.  For example, the label must list the
23 specific nutrient subject to the claim in the claim itself, and may only do so if a Reference Daily
24 Intake (RDI) has been established for the nutrient.  The Defendants argue that the terms "contain"
25 and "source of," which are used on their products' labels, are not defined by federal regulation as
26 characterizing the level of a nutrient.  Defendants' Memorandum ("Mem."), ECF No. 50, at
27 11:11-14.  Therefore, Defendants would only be violating the FDCA's nutrient claim labeling
28 requirements, adopted by the Sherman Law, if California law exceeded the FDA's regulations.

Defendants are correct that the terms "contain" and "source of" are not officially defined by FDA regulations as making a nutrient content claim. However, the FDA is not silent with regard to these terms. In a warning letter to Jonathan Sprouts, Inc., the FDA explained that claims using the word "source" were nutrient content claims. FAC ¶ 58. By using the term "source," the company had "characterize[d] the level of nutrients of a type required to be in nutrition labeling." Id. Since the FDA had not defined the term "source" by regulation, it could not be used in nutrient content claims. Id.

Based on the allegations in the FAC, which the Court must accept as true, the Court cannot conclude that Plaintiff has failed to assert a legitimate nutrient content claim under California law, which is identical to what the FDA classifies as a nutrient content claim. Therefore, it would be inappropriate to dismiss the claim as preempted.

### D. Failure to Plead Fraud with Particularity

Defendant argues that the Plaintiff fails to meet the standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a heightened level of particularity in support of claims of fraud. Plaintiff does not dispute that his FAL, CLRA and several of his UCL claims are grounded in fraud. To satisfy Rule 9(b), "[a]verments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted). The complaint must be specific enough to give defendants notice of the particular misconduct. Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

Defendant's argument relies, in part, on Sateridale v. R.J Reynolds Tobacco Co., 697 F.3d 777 (9th Cir. 2012). Bromley cites this case as support for the proposition that pleadings must contain more than a bare assertion that a statement is misleading to meet the "how" requirement of Rule 9(b). However, in Sateridale, plaintiff's assertions were lacking any specificity whatsoever. The plaintiff also failed to allege reliance on the misleading statements at all, since he did not allege that he made any purchases after the statement was made. Id. at 793. The FAC does not contain such dramatic shortcomings.

The FAC states that the "who" is Bromley Tea Company and other defendants; the "what"

is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, including Pure Green Tea and 100% Organic Pure Black Tea, as well as on its website; the "when" is since 2008 and throughout the class period; the "where" is Bromley's package labels and website.  The FAC alleges that Defendant's product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not have purchased absent these allegedly deceptive statements, satisfying the requirement to demonstrate "how" the statements were misleading.

These allegations are sufficient to satisfy Plaintiff's obligations under Rule 9(b).  See Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) (in case involving alleged misrepresentations concerning ice cream, "[t]he 'who' is Ben & Jerry's, Breyers, and Unilever. The 'what' is the statement that ice cream containing alkalized cocoa is 'all natural.' The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.'  The 'where' is on the ice cream package labels. The 'how the statements were misleading' is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a 'synthetic.'"); Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1126 (N.D.Cal.2010) (consumers of granola bars satisfied Rule 9(b) by identifying in their complaint "the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used"); In re ConAgra Foods Inc., 908 F. Supp. 2d 1090, 1099 (C.D. Cal. 2012).

**E.     Unjust Enrichment Claims**

Defendants also seek to dismiss Plaintiff's seventh cause of action, restitution based on unjust enrichment/quasi contract.  Bromley argues that unjust enrichment in not an independent cause of action, but rather is "a general principle underlying various legal theories and remedies that are synonymous with restitution." Mem., at 14:21. Plaintiffs assert that their claim is allowed under California law, which treats the allegation of unjust enrichment as a claim for restitution based on "quasi contract."

Defendants are correct that in California "[t]here is no cause of action for unjust

18

1    enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract
2    or imposition of a constructive trust." Myers-Armstrong v. Actavis Totowa, LLC, 382 Fed. Appx.
3    545, 548 (9th Cir. 2010) (unpublished) (citing McKell v. Washington Mut., Inc.,142 Cal.App.4th
4    1457, 1489, 49 Cal.Rptr.3d 227, 254(2006). See also Hill v. Roll Intl. Corp, 195 Cal. App. 4th
5    1295, 1307, 128 Cal.Rptr.3d 109 (2011). Additionally, restitution is already a remedy for Clancy's
6    claims under the UCL. See In re Tobacco II Cases, 46 Cal.4th 298, 313, 93 Cal.Rptr.3d 559, 570
7    (2009). Therefore, in addition to the fact that unjust enrichment is not a free-standing claim, any
8    additional claims for restitution that Plaintiff could make would be superfluous.

### F.    Breach of Warranty Claims

Defendants move to dismiss Plaintiff's warranty claims, which Plaintiffs raised under California's Song-Beverly Consumer Warranty Act and the Federal Magnuson-Moss Warranty Act. Plaintiff presents no argument in opposition to the Defendants' motion. Rather, Plaintiff concedes that every court to hear similar claims has dismissed them and states that he is preserving the issue for any potential appeal. Plaintiff's Opposition Brief ("Opp."), ECF No. 58, at 2, n. 2.

Plaintiff's Song-Beverly Act claim is expressly barred since Plaintiff acknowledges that the products at issues are "consumables." See Cal Civ. Code § 1794(a), (d); see also FAC, at ¶ 201. The Court also agrees with the many courts who have determined that representations like the ones challenged here are descriptions of the product rather than promises of a defect-free product or of a level of performance over a specific time period as required by Magnuson-Moss, 15 U.S.C. § 2301(6). See Lanovaz v. Twinings N. Am., Inc., No. C-12-02646-RMW, 2013 WL 675929, at *7 (N.D. Cal. Fed. 25, 2013). More importantly, Magnuson-Moss is "expressly 'inapplicable to any written warranty the making or content of which is otherwise governed by Federal law,'" and therefore the FDCA regulations at issue here are fatal to any Magnuson-Moss claim. Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012). Plaintiff has also failed to allege that the products at issue cost more than five dollars, as required by 15 U.S.C. § 2302(e).

### G.    Motion to Dismiss Individual Defendants and London Holding Company

Defendants also move to dismiss all claims against the individual defendants, as well as the

19

London Holding Company, Inc.  In light of the parties' recent stipulation to dismiss those claims without prejudice, ECF No. 67, this request for relief is moot.

### IV.    Motion to Stay Discovery

Defendants filed a motion pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for an order staying discovery "until the pending motion for judgment on the pleadings is resolved and Plaintiffs' First Amended Complaint is held to have stated a legally sufficient claim against Defendants." ECF No. 54, at 1:9–12.  The Court has resolved the Defendants' motion for judgment on the pleadings, and has determined that Plaintiff has stated a legally sufficient claim.  The request for relief is therefore moot.

### V.    CONCLUSION

For the foregoing reasons the Court hereby GRANTS IN PART and DENIES IN PART Defendant Bromley's motion for judgment on the pleadings and motion to strike.  Clancy's unjust enrichment, restitution, Song-Beverly and Magnuson-Moss claims (causes of action seven through eight) are DISMISSED WITH PREJUDICE, since those claims are barred as a matter of law. Plaintiff's claims against individual defendants and against London Holding Company have been DISMISSED WITHOUT PREJUDICE pursuant to the parties' stipulation.  The remaining claims are not dismissed.

The Court also hereby DENIES AS MOOT Defendant's motion to stay discovery.

**IT IS SO ORDERED**.

Dated:  August 9, 2013



JON S. TIGAR  
United States District Judge